UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE O. ALMADA NAGY; WOODEX,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>RETAIL CAPITAL LLC dba Credibly; CREDIBLY OF ARIZONA LLC,<br><br>　　　　　　　　　　　Defendants. | Case No.: 23cv537-LL-BLM<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 42] |

Before the Court is Plaintiffs and Counter-Defendants Jorge O. Almada Nagy and Woodex (collectively "Plaintiffs") Motion for Summary Judgment (ECF No. 42) on Defendants and Counterclaimants Retail Capital LLC dba Credibly ("Retail Capital") and Credibly of Arizona LLC's ("COA") (collectively "Defendants") Counterclaim (ECF No. 33) and on Plaintiffs' Second Amended Complaint (ECF No. 16). For the following reasons, the Court **DENIES** the Motion.

### I.   PROCEDURAL BACKGROUND

On March 24, 2023, Plaintiffs filed a Complaint against Defendants alleging that Defendants "tricked Plaintiffs into handing over personal and financial information by pretending to enter into a loan agreement with them, then, posing as Plaintiffs, fraudulently

obtained a loan from Defendants for the same amount, but with far less favorable terms than those to which Plaintiffs agreed." ECF No. 1 ¶ 1. Plaintiffs sought judgment "confirming they owe Defendants no contractual obligations under that forged agreement and prohibiting Defendants from taking any measures to collect from thereon." *Id.* ¶ 2.

On May 15, 2023, Defendants filed a Motion to Dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. On June 5, 2023, Plaintiffs filed an Amended Complaint, and on June 26, 2023, Plaintiffs were given leave to file a Second Amended Complaint. ECF Nos. 9, 15. The operative Complaint in this action is Plaintiffs' Second Amended Complaint ("SAC"), filed on July 3, 2023 which alleges the following causes of action: (1) violation of California Unfair Competition Law against all Defendants; (2) violation of California Commercial Code Filing of Unauthorized Financing Statement by Woodex against Retail Capital; (3) defamation by Woodex against Retail Capital; (4) conspiracy against all Defendants; (5) aiding and abetting tortious conduct against all Defendants. ECF No. 16. Defendants initially filed a Motion to Dismiss Plaintiffs' SAC, but eventually the parties jointly moved to withdraw it, which the Court granted. ECF Nos. 21, 26, 27. On October 10, 2023, Defendants filed an Answer to the SAC, and also asserted Counterclaims for the following: (1) breach of express contract, (2) breach of implied contract, (3) common count for money had and received; (4) conversion; (5) unjust enrichment. ECF No. 33.

On September 13, 2024, Plaintiffs filed the instant Motion for Summary Judgment. ECF No. 42. On October 4, 2024, Defendants filed a Response in Opposition to the Motion for Summary Judgment. ECF No. 45. On October 11, 2024, Plaintiffs filed a Reply to the Motion for Summary Judgment. ECF No. 46.

## II. FACTUAL BACKGROUND

Plaintiff Woodex is an international wood exporting and distributing company and Plaintiff Mr. Alameda is the President of Woodex. ECF No. 46-1 ¶¶ 1, 2, Separate Statement of Material Facts in Support of Plaintiffs' Motion for Summary Judgment and Plaintiffs' Responses to Defendants' Additional Undisputed Facts (hereinafter "Separate

1   Statement of Material Facts"). Plaintiffs allege that they started looking for a small business
2   loan in late 2022. *Id.* ¶ 4. Plaintiffs further allege they received a proposal from a company
3   named "BG Capital" for a loan for $380,000, at 4.375% fixed annual interest, with monthly
4   payments of $7,062.77 for five years, which they accepted. *Id.* ¶ 7. Defendants dispute this
5   fact and state that Plaintiffs never received a signed agreement from BG Capital. *Id.*
6   Plaintiffs allege that they provided BG Capital with their personal and financial
7   information, such as tax returns and social security numbers, as part of the loan application.
8   *Id.* ¶ 8; *see also* Compl. ¶ 15. Plaintiffs allege that on February 23, 2023, they received a
9   "BG Capital Loan Addendum" through Dropbox Sign and that Plaintiff Nagy
10  electronically signed it within thirty minutes. Separate Statement of Material Facts ¶ 9; *see*
11  *also* Compl. ¶ 16. Plaintiffs attach a copy of the BG Loan Capital Addendum as Exhibit A
12  to the SAC. Plaintiffs allege that BG Capital was not a real company, but rather a fraudster
13  who had some relationship with Defendants. Separate Statement of Material Facts ¶ 13;
14  *see also* Compl. ¶ 17-19.

15        Plaintiffs allege that BG Capital contacted Defendants and used Plaintiffs'
16  confidential information to negotiate a loan with the same principal as the loan Plaintiffs
17  thought they were getting ($380,000), but with less favorable terms. Separate Statement of
18  Material Facts ¶ 14; *see also* Compl. ¶ 19. Plaintiffs allege that the less favorable terms
19  included that Plaintiff had an estimated annual percentage rate of 66.89%, a finance charge
20  of $149,560, daily payments of $1,967.65, and a one-year term. Separate Statement of
21  Material Facts ¶ 14; *see also* Compl. ¶ 19. Plaintiffs allege that a few hours after Plaintiffs
22  electronically signed the "BG Capital Loan Addendum", the fraudsters electronically
23  forged Plaintiffs' signature on the closing document for the fraudulent loan they negotiated
24  with Defendants. Separate Statement of Material Facts ¶ 18; *see also* Compl. ¶ 19. The
25  loan agreement that Plaintiffs claim was forged with their signature is attached as Exhibit
26  B to the SAC.

27        Plaintiffs further allege that on February 28, 2023, Defendants wired $380,000 to
28  Plaintiffs' bank account, and that Plaintiffs thought they were receiving the proceeds of the

loan agreement that they actually signed. Separate Statement of Material Facts ¶ 34; *see also* Compl. ¶ 22. Plaintiffs allege that Defendants tried to collect payments from Plaintiffs per the terms of the allegedly forged loan agreement, using an automated clearing house ("ACH") system linked to Plaintiffs' bank account. Separate Statement of Material Facts ¶ 36; *see also* Compl. ¶ 25. After the first withdrawal, Plaintiff placed a block on the automated payments because Plaintiff suspected they were being defrauded. Separate Statement of Material Facts ¶ 38; *see also* Compl. ¶ 25. On March 3, 2023, Defendants emailed Plaintiff Almada to request that he remove the block, which Plaintiffs did not do. Separate Statement of Material Facts ¶ 39, 40. Plaintiffs claim that the correspondence that ensued after the March 3, 2023 email with Defendants is when they first learned of and saw the allegedly forged loan agreement executed by the fraudsters. Separate Statement of Material Facts ¶ 40; *see also* Compl. ¶ 31. Defendants demanded Plaintiffs return the $380,000 loan principal, but Woodex said they no longer had most of the funds. Separate Statement of Material Facts ¶ 42; *see also* Compl. ¶ 31. Plaintiffs state that there was no meeting of the minds between the parties, and they brought this action to prevent Defendants from holding Plaintiffs to the allegedly forged agreement. SAC 33.

Defendants bring Counterclaims against Plaintiffs for (1) breach of express contract; (2) breach of implied contract; (3) money had and received; (4) conversion; and (5) unjust enrichment. ECF No. 33. Defendants' main argument to support their Counterclaims is that "[a]lthough Nagy on behalf of Cross-defendants specifically acknowledged and agreed to each material term of the Agreement in a recorded pre-funding verification telephone call, and although Counter-defendants admit receiving the purchase price of $380,000 from Counter-claimants, Counter-defendants have failed and refused to make a single payment under the Agreement or to return the purchase money." ECF No. 33 ¶ 1.

### III. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "If the evidence [opposing summary judgment] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The moving party bears the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. "In order to carry its burden of production, the moving party must produce either evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmovant to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, [and] designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted). In carrying their burdens, the parties can either cite to evidence supporting their own position or show the other side's position is either unsupportable or devoid of any genuine dispute. Fed. R. Civ. P. 56(c)(1). In addition, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## IV. EVIDENTIARY OBJECTIONS

On a motion for summary judgment, parties may only object to evidence if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

While a party's objection may be cognizable at trial, on a motion for summary judgment, the court is concerned only with the admissibility of the relevant *facts* at trial, and not the *form* of these facts as presented in the motions. *See* Fed. R. Civ. P. 56(c)(2) advisory committee note to 2010 amendment ("Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting."); *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

Defendants object to portions of the declarations of Plaintiff Almada and Joseph M. Mellano and various exhibits filed in support thereof. ECF No. 45-3. Defendants object based on relevance, hearsay, lack of foundation, speculation, conclusion, improper opinion, and argument. *Id.* While these objections may be cognizable at trial, Defendants have not shown that the facts stated within these exhibits could not be presentable in any form as evidence at trial. *See* Fed. R. Civ. P. 56(c)(2); *Fraser*, 342 F.3d at 1036–37. Accordingly, to the extent the court relies upon evidence to which Defendants object, the objections are **OVERRULED**. To the extent the court does not, the objections are **DENIED** as moot.

### V.  ANALYSIS

Plaintiffs state in their Motion for Summary Judgment that they filed this lawsuit against Defendants "chiefly to avoid the Receivables Purchase Agreement ('RPA'), the forged agreement the fraudster signed, which Defendants maintain is enforceable." MSJ at 5. Plaintiffs argue that "the evidence here conclusively establishes the Parties never entered into a valid contract" and that "Defendants cannot enforce the RPA because Plaintiffs never agreed to it." *Id.* In support thereof, Plaintiffs argue that "Alameda did not sign the RPA, and Defendants have zero evidence he did." *Id.* at 13. Plaintiffs further argue that "[i]ndeed,

Almada was entirely unaware the RPA existed until Defendants sent him a copy after he blocked their attempts to collect daily payments on it." *Id.* (citing Separate Statement of Material Facts ¶¶ 21; 30-32, 40).

Defendants argue that "there are triable issues of fact as to whether there is an express and/or oral contract." Oppo. at 8. Defendants state that "[a]lthough Plaintiffs now claim that they did not sign the RPA, Almada admitted at his deposition that he had read and signed the contract." *Id.* Defendants argue that "[w]hether to believe Almada's declaration in support of this Motion or his deposition testimony is for the jury to determine at trial, not for the judge to decide on summary judgment." *Id.*

Although Plaintiffs assert that there are no genuine issues of material fact as to whether he signed the RPA, the Court disagrees. All three material facts that Plaintiffs rely on in support of their argument that Plaintiff Almada was entirely unaware of the RPA until after his March 3, 2023 correspondence with Defendants are disputed. For example, Plaintiffs' Material Fact Number 21 is that "[a]s of [March 3, 2023], Almada had no idea the RPA existed." ECF No. 46-1, Separate Statement of Material Facts. Plaintiffs' Material Fact Number 30 is "[t]he verifier covered no other provisions in the RPA, nor did he confirm Almada had ever seen the RPA." *Id.* Plaintiffs' Material Fact Number 31 is that "the only time the verifier mentioned the RPA by name during the call, Almada had to ask him to repeat the question, in response to which the verifier asked a different question without referring to the RPA." *Id.* In addition to these three key facts being disputed, the parties also dispute whether Plaintiffs had a signed agreement with BG Capital. For example, in response to Plaintiffs' Material Fact Number 7, Defendants state that "Plaintiffs never received a signed agreement from BG Capital." Separate Statement of Material Facts ¶ 7.

Plaintiffs summarily argue in their Motion for Summary Judgment that the evidence indisputably shows the RPA was forged. For example, Plaintiffs argue as follows:

(1) The signature on the [RPA] bears no resemblance to Almada's actual signature on the BGCLA and Almada's driver's license.

      (2) The audit trail appended to the RPA proves the person who signed it was the same person who sent Almada the BGCLA.

      (3) Defendants sent the RPA for electronic signature to [an email address Defendants knew did not belong to Almada], and the fraudster used that email address to sign it.

Plaintiffs' MSJ at 13.

    However, upon the Court's review of the record, this issue is not so clear, making it inappropriate for the Court to summarily determine this case on Plaintiffs' Motion for Summary Judgment. For example, Defendants introduce evidence that during Plaintiff Almada's deposition he was asked "[w]hen they asked you if you signed the purchase agreement, you said yes, even though you didn't know what it was; correct?" ECF No. 45-4 at 19:8-10. Plaintiff Almada answered "[a]t the moment of the conversation, yes." *Id.* at 19:11. Defendants also introduce evidence of a verification call recording from February 23, 2023 that Defendants conducted with Plaintiffs, during which Plaintiff Almada was asked by the Verifier: "Okay, so now I'm going to move onto the terms, and I just need you to confirm that you signed the contract on your behalf." Separate Statement of Material Facts ¶ 45 (citing Mellano Decl., Exh. 14 at 8:25-8:30). Plaintiff responded "Sure." *Id.* This evidence directly conflicts with the Declaration filed by Plaintiff Almada in support of the instant Motion for Summary Judgment that states "I did not sign that document [RPA]" and that "the signatures and initials on it are not mine." ECF No. 42-3 ¶ 4, Declaration of Jorge O. Almada Nagy. Plaintiffs would like the Court to disregard the conflicts between Plaintiff Almada's Declaration, his deposition testimony, and the recording of the verification call. However, the Court finds that there remain genuine issues of material fact regarding whether Plaintiffs signed the RPA.

    This case hinges on whether Plaintiff Almada signed the RPA, which will determine whether an enforceable contract existed between the parties. Because factual issues remain that cannot be resolved on this record and should be decided by a jury, the Court **DENIES**

Plaintiffs' Motion for Summary Judgment on all of Defendants' Counterclaims, and also on Plaintiffs' equitable relief claims in the SAC.

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Summary Judgment. The parties are encouraged to reevaluate settlement in light of this Court's Order. The parties are encouraged to contact the Magistrate Chambers assigned to this case to schedule a settlement conference if they believe it would be fruitful. The parties shall submit a joint status report to the Court within **ninety (90) days** of this order updating the Court on the status of their settlement negotiations, whether they need more time to explore settlement, and proposed deadlines for the remainder of the case, as needed.

**IT IS SO ORDERED.**

Dated: April 8, 2025

_____
Honorable Linda Lopez
United States District Judge